**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|                           |     |                        |
|---------------------------|-----|------------------------|
| SIMPLIVITY CORPORATION    | )   |                        |
|                           | )   |                        |
| Plaintiff,                | )   |                        |
|                           | )   |                        |
|                           | )   |                        |
| v.                        | )   | **CIVIL ACTION**       |
|                           | )   | **NO. 4:15-13345-TSH** |
|                           | )   |                        |
| SPRINGPATH, INC.          | )   |                        |
|                           | )   |                        |
| Defendant.                | )   |                        |
|                           | )   |                        |

**July 15, 2016**

<u>**REPORT AND RECOMMENDATION**</u>

District Judge Hillman has referred to this court defendant Springpath Inc.'s ("Springpath" or "defendant") motion to dismiss plaintiff SimpliVity Corporation's ("SimpliVity" or "plaintiff") Second Amended Complaint for Patent Infringement ("SAC"). <u>See</u> Docket # 38, 40-42, 53. For the reasons that follow, the court recommends that Springpath's motion be denied in its entirety.

I.     <u>Procedural History</u>

SimpliVity filed its original Complaint for Patent Infringement (the "Complaint") in September 2015. <u>See</u> Docket # 1. An amended complaint (the "FAC") followed, which was identical to the Complaint but for the correction of a typographical error. <u>See</u> Docket # 16-19. After moving to dismiss the FAC, Springpath agreed to withdraw its motion in lieu of the court ruling on it, and for SimpliVity to file the SAC. <u>See</u> Docket # 38, 45, 46. Springpath now has

moved to dismiss the SAC, SimpliVity has opposed the motion, and Springpath has submitted a reply.  See Docket # 40-42, 49, 52.[1]

II.    Factual Background

SimpliVity describes itself as "one of the fastest growing and innovative companies in the data infrastructure industry."  See SAC at ¶ 1.  Founded in 2009, it develops hyperconvergence technology geared toward "storing and processing data; enhancing data-management efficiency; streamlining data operations; and improving physical storage hardware setup."  Id. at ¶ 8.  It touts its products' abilities to "converg[e] the functionalities of numerous disparate products . . . into 'all-in-one' products."  See id.  Presently at issue is SimpliVity's U.S. Patent No. 8,478,799 (the "'799 Patent"), which "discloses and claims a novel file system and method that specifically addresses the problems caused by traditional [data] storage architectures."  See id. at ¶ 9.[2]  By dividing the tasks of storing and monitoring data between an object store and a namespace file system, and through the use of object fingerprints, the '799 Patent claims to bypass certain technological hurdles, allowing for more efficient data

---

[1] The parties also have submitted supplemental briefing on the Court's decision in Halo, discussed below, which was handed down after briefing and oral argument on the instant motion, and which impacts willful infringement jurisprudence.  See Docket # 65-67.

[2] The '799 Patent is attached as Exhibit A to the SAC.  Its application became publicly available in January 2011 and it issued in July 2013.  SimpliVity holds all right, title, and interest in the patent.  See SAC at ¶¶ 27, 28, 30.  The patent's abstract states:

> Method and apparatus for providing a digitally signed file system wherein a namespace file system accesses an object store in which data, meta data and files are objects, each object having a globally unique and content-derived fingerprint and wherein object references are mapped by the fingerprints; the file system has a root object comprising a mapping of all object fingerprints in the file system, such that a change to the file system results in a change in the root object, and tracking changes in the root object provides a history of file system activity.

Docket # 38-1.  More specifically at issue are claims 1 and 19 of the '799 Patent, which are reproduced in paragraphs 32 and 33 of the SAC.

deduplication and associated benefits.  See id. at ¶¶ 10-11 ('799 Patent "solves the problems associated with storing and processing large amounts of data" in part "[b]y deriving object names from content and comparing those names instead of the underlying data").  SimpliVity sells worldwide products that incorporate this technology, resulting in the company becoming a leader in its field with a $1B valuation, thirty-seven granted patents, and sixty-eight pending patent applications at the time of the SAC.  See id. at ¶¶ 12-15.

Springpath (previously known as "Storvisor") is described as a SimpliVity competitor and "recent startup" formed in 2012.  See id. at ¶¶ 1, 17.  The SAC alleges that at a trade show in 2012, Springpath founder Krishna Yadappanavar "appeared at SimpliVity's booth and asked a number of specific engineering-related questions about SimpliVity's technology" without, when pressed to disclose his identity, revealing his connection to Springpath or its predecessor.  See id. at ¶¶ 18-20.  Springpath subsequently released its Data Platform product, which is alleged to "mimic[ ] SimpliVity's patented technology."  See id. at ¶ 21.  SimpliVity's key substantive allegation is that "Springpath makes, uses, sells, and offers to sell infringing technology, including its Data Platform, to develop and operate computer systems that store and retrieve various kinds of data and converges functionalities of disparate products by leveraging SimpliVity's patented file system and method."  See id. at ¶ 22.  SimpliVity further alleges that Springpath instructs its customers on the installation and use of its software.  See id. at ¶ 23; see also id. at Ex. B p. 15; http://springpathinc.com/resources.php (last visited July 11, 2016); youtube.com/channel/UChgwQCOFU9LSMe4Uvz0mO_g (last visited July 11, 2016).  Finally, SimpliVity states that both Springpath cofounder Mallik Mahalingam's 2015 Data Platform presentation as well as SimpliVity's investigation into Data Platform reveal no use for Data

Platform "that does not infringe the '799 patent through, for example, the product's use of fingerprints, objects, and object stores."  See SAC at ¶¶ 24-26, 49; see also https://www.youtube.com/watch?v=krmkywnz970 (last visited July 11, 2016).  SimpliVity thus alleges Springpath has directly, contributorily, by inducement, and willfully infringed the '799 Patent, and accordingly seeks monetary and injunctive relief.  Springpath requests dismissal of each claim.

III.     Legal Standard

On a motion to dismiss under Rule 12(b)(6), a court "must assume the truth of all well-plead[ed] facts and give the plaintiff the benefit of all reasonable inferences therefrom."  Ruiz v. Bally Total Fitness Holding Corp., 496 F.3d 1, 5 (1st Cir. 2007) (citing Rogan v. Menino, 175 F.3d 75, 77 (1st Cir. 1999)).  Materials attached to a complaint, or incorporated by reference, are a part of the pleading itself, and a court may consider them on a motion to dismiss.  Trans-Spec Truck Serv. v. Caterpillar, 524 F.3d 315, 321 (1st Cir. 2008).  To survive a motion to dismiss, the plaintiff must state a claim that is plausible on its face.  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  Id. at 555 (citations omitted).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 556).  Dismissal is appropriate if plaintiff's well-pleaded facts do not "possess enough heft to show that plaintiff is entitled to relief."  Ruiz Rivera v. Pfizer Pharms., LLC, 521 F.3d 76, 84 (1st Cir. 2008) (quotations and original alterations omitted).

IV.     Discussion

The discussion that follows first considers whether SimpliVity has adequately alleged Springpath's direct infringement of the '799 Patent.  It then turns to SimpliVity's indirect (*i.e.* contributory and induced) infringement claims, whose threshold question is whether SimpliVity has adequately pled Springpath's knowledge of the '799 Patent.  The court then considers additional elements required for SimpliVity's contributory and induced infringement claims: SimpliVity's knowledge of direct third-party infringement, whether Data Platform possesses a substantial non-infringing use, whether Data Platform was especially made or adapted to infringe and Springpath's specific intent to induce infringement.  Finally, it addresses SimpliVity's claim for willful infringement and request for injunctive relief.

A.      Direct Infringement

SimpliVity has alleged that both Springpath and third parties directly infringe the '799 Patent.  Springpath allegedly does so "at least by making and using in the United States its infringing product, Springpath's Data Platform," while direct third-party infringement is alleged to occur "[w]hen end-users, resellers, and/or customers use Springpath's Data Platform product as Springpath instructs them to."  See SAC at ¶¶ 35, 43.[3]  Although the context thus differs, the core question is whether the allegations are sufficient to allow the court to infer that use of Data Platform infringes the '799 Patent.  The court concludes that they are.

As a threshold matter, in keeping both with what the court determines to be "just and practicable," see infra, and with the court's understanding of the parties' expectations, the direct

---

[3] As will be discussed, SimpliVity's indirect infringement claims include a direct infringement element which entails certain considerations related to, but unnecessary for resolution of, the baseline question of whether Data Platform directly infringes.  For example, the indirect infringement claims require that Springpath had knowledge of direct third-party infringement.  These issues will be addressed in due course.

infringement allegations are assessed not under Form 18, but instead under the more familiar (and more stringent) standard for motions to dismiss established in Twombly, Iqbal, and their progeny.[4]  See, e.g., Avago Techs. Gen. IP (Singapore) PTE Ltd. v. Asustek Computer, Inc., No. 15 Civ. 4525, 2016 WL 1623920, at *4 (N.D. Cal. Apr. 25, 2016) (citing recent cases holding, e.g., that "[u]nder the new rules, allegations of direct infringement will be subject to the pleading standards established by Twombly and Iqbal, requiring plaintiffs to demonstrate a 'plausible claim for relief'").  Although the present case was filed before Form 18's abrogation, "'[t]he amended Rules apply to pending cases 'insofar as just and practicable.'"  Rembrandt Patent Innovations LLC v. Apple Inc., No. 14 Civ. 05093, 2015 WL 8607390, at *2 (N.D. Cal. Dec. 13, 2015) (quoting H.R. Doc. No. 114-33, at 2 (2015)).  Particularly because the operative complaint (the SAC) postdates December 1, 2015 (and considering SimpliVity's implicit consent to Form 18's non-applicability—it does not argue on this motion that the prior standard applies), the court finds it "just and practicable" to decide the motion to dismiss under Twombly and Iqbal.  The court turns then to Springpath's motion to dismiss the claim of direct infringement.

In relevant part, the Patent Act provides: "[W]hoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent."  35 U.S.C § 271(a).  The district court in OpenTV, Inc. v. Apple Inc., No. 15 Civ. 02008, 2016 WL 344845 (N.D. Cal. Jan. 28, 2016) recently explained that factual allegations need only be enough

---

[4] Prior to December 1, 2015, Form 18 governed pleading of direct infringement claims. See In re Bill of Lading Transmission & Processing Sys. Patent Litig., 681 F.3d 1323, 1334 (Fed. Cir. 2012).  The now-defunct Fed. R. Civ. P. 84 provided that the forms in the Appendix—including Form 18—satisfied the pleading standards of the Federal Rules of Civil Procedure.  However, "Rule 84 has been abrogated, so In re Bill of Lading no longer applies."  Rembrandt Patent Innovations LLC v. Apple Inc., No. 14 Civ. 05093, 2015 WL 8607390, at *2 (N.D. Cal. Dec. 13, 2015).

"'to place the alleged infringer on notice.  This requirement ensures that the accused infringer has sufficient knowledge of the facts alleged to enable it to answer the complaint and defend itself.'"  Id. at *3 (quoting Internet Patents Corp. v. Gen. Auto. Ins. Servs., 29 F. Supp. 3d 1264, 1267 (N.D. Cal. 2013)); see also Regeneron Pharm., Inc. v. Merus B.V., No. 14 Civ. 1650, 2014 WL 2795461, at *4 (S.D.N.Y. June 19, 2014) (complaint sufficient where it "alleged a specific patent and a specific product that allegedly infringes that patent by virtue of certain specific characteristics").[5]

The court finds the SAC's factual allegations (which it is required to accept as true) to put Springpath on notice, and allow a reasonable inference of liability.  The SAC describes what the '799 Patent does and in some detail how it operates by using fingerprints, object files, and object stores.  And it expressly identifies a product—Data Platform—that allegedly infringes the '799 Patent.  Further, relying in part on a recorded presentation by Springpath's co-founder, the SAC plausibly alleges that Springpath uses SimpliVity's patented technology to achieve data de-duplication, one of the benefits the SAC alleges SimpliVity's technology also provides.  Based upon the foregoing authorities, this court finds the factual allegations of direct infringement are sufficient.

Springpath's core dismissal argument focuses on the allegations concerning fingerprints, stating that "the mere use of fingerprints and object stores in Data Platform does not make infringement plausible.  The claims of the patent require '*globally unique*' object fingerprints, and the SAC contains no allegation whatsoever that the fingerprints used in Data Platform are globally unique, the essence of the alleged invention."  Docket # 41 at p. 13; id. at pp. 7-8.

---

[5] The court notes that OpenTV's analysis proceeded under the Twombly/Iqbal standard, not Form 18.  See 2016 WL 344845, at *3.  Similarly in Regeneron, "the sufficiency of [plaintiff's] claim for patent infringement [was] assessed pursuant to the basic elements set forth in Form 18 as well as the guidance provided in Twombly."  2014 WL 2795461, at *2; id. at *4.

Because the SAC alleges only that Data Platform uses fingerprints—rather than globally unique fingerprints—Springpath argues there can be no infringement, since the '799 Patent acknowledges "fingerprints" to have been known in the prior art.

The court disagrees on three related grounds. First, while true that the SAC does not allege Data Platform's use of globally-unique fingerprints, the cases cited above make clear that the plausibility standard does not require this level of specificity. Certainly, the factual allegations put Springpath on notice to answer the complaint, which is all that is required now. See, e.g., OpenTV, supra; Bender v. LG Electronics U.S.A., Inc., No. 09 Civ. 02114, 2010 WL 889541, at *6 (N.D. Cal. Mar. 11, 2010) ("Twombly and Iqbal require "a brief description of what the patent at issue does and an allegation that certain named and specifically identified products or product components also do what the patent does, thereby raising a plausible claim that the named products are infringing."). Springpath has asked—improperly at this stage—for the court to wade beyond the sufficiency of the SAC and into an assessment of the SAC's (and perhaps even the '799 Patent's) substantive merits. See, e.g., Godin v. Schencks, 629 F.3d 79, 89 (1st Cir. 2010) ("Rule 12(b)(6) serves to provide a mechanism to test the sufficiency of the complaint.") (quoting Iqbal).[6]

In this regard, Incom Corp. v. Walt Disney Co., No. 15 Civ. 3011 (C.D. Cal. Feb. 4, 2016) is instructive. The plaintiff there alleged "that a principal inventive concept of the patents in suit is the use of [RFID technology] to recognize human beings and keep track of their attendance." Incom Docket # 39 at p. 1. It claimed that "prior to its inventions, such a system

---

[6] Further, "all a plaintiff ordinarily has access to at this stage of litigation is public information and knowledge. Therefore, a plaintiff cannot be expected to allege factual details toward how an infringing device works. [T]he specifics of how [a defendant's] purportedly infringing device works is something to be determined through discovery." Xpoint Techs., Inc. v. Microsoft Corp., 730 F. Supp. 2d 349, 353 (D. Del. 2010) (quoting McZeal v. Sprint Nextel Corp., 501 F.3d 1354, 1358 (Fed. Cir. 2007)) (internal citation and quotation marks omitted).

was unavailable because RFID did not work effectively while near human beings."  Id.  Thus,

RFID technology previously existed; the novelty of the plaintiff's invention was enabling the

technology to effectively operate near people.

In holding these allegations sufficient, the district court in Incom wrote that

> the FAC does more than name a product and baldly conclude that it
> infringes a patent which belongs to Plaintiff.  Plaintiff attaches the
> patents in suit to the FAC and describes how its Attendance
> Tracking System uses RFID technology and ID badges to track
> human presence in large volumes.  Plaintiff asserts that prior to its
> invention, such technology was unavailable because RFID did not
> work effectively near human beings.  Plaintiff then names specific
> products developed, manufactured and used by Defendants which,
> like Plaintiff's system, track human presence in large volumes.
> *Plaintiff has stated a plausible claim for direct infringement by
> specifically identifying Defendants' products and alleging that they
> perform the same unique function as Plaintiff's patented system.*

Id. at p. 4 (emphasis added) (citing Bender, 2010 WL 889541, at *6).  Thus, a direct

infringement plaintiff may satisfy the pleading requirements by alleging that the defendant's

product "perform[s] the same unique function" as the patent-in-suit; or stated otherwise, that the

accused product "also do[es] what the patent does."  See id.; Bender, 2010 WL 889541, at *6.

Significantly, this does not necessarily require a plaintiff to demonstrate the same technical

novelty underlying its patent; only that the alleged infringer developed a product that achieves a

substantially similar end.

Second, and related, the predicate for Springpath objection that the SAC alleges the use

merely of "fingerprints" and not "globally-unique fingerprints" is that there exists a significant

difference between these terms as well as the respective benefits that each provides.[7]  Common

sense and experience, two guideposts for interpreting the sufficiency of a complaint, see, e.g.,

---

[7] At oral argument, Springpath's counsel explained that globally-unique fingerprints allow for full de-
duplication, as opposed to "best efforts deduplication."  See Docket # 63 at p. 9.

Iqbal, 556 U.S. at 679 (citing Iqbal v. Hasty, 490 F.3d 143, 157 (2d Cir. 2007)), suggest that each term describes a method for distinguishing data based on a particular inherent characteristic or combination thereof; for example, all data bearing a particular name, or date, or precise sequence of words.  Any further difference in the meaning of the terms goes to the allegations' merits and accordingly, beyond the scope of a Rule 12(b)(6) motion.  See, e.g., Godin, supra.

To be sure, at some point in this litigation SimpliVity may need to address the discrepancy between full de-duplication made possible by globally-unique fingerprints, as opposed to Data Platform's best efforts deduplication.  This inquiry, however, lies safely beyond the pleading stage.  As the district court noted in Regeneron, "[w]hether developments in the evidence will show non-infringement or some other defense is not a matter for this Court to consider at this preliminary stage."  2014 WL 2795461, at *4.  Lacking the benefit of a fully-developed record—and particularly without expert discovery, which likely will prove critical considering the products' technical natures—it would be improper to accept Springpath's championed conclusion that this distinction renders implausible the allegation that Data Platform infringes the '799 Patent,[8] for the fundamental reason that "[a]t the complaint stage, inferences are taken, and doubts are resolved, in favor of the non-moving party."  Amcel Corp. v. Int'l Executive Sales, Inc., 170 F.3d 32, 36 (1st Cir. 1999) (citing Gooley v. Mobil Oil Corp., 851 F.2d 513, 514 (1st Cir. 1988)).

---

[8] Perhaps most illustrative are Springpath's statements at oral argument.  Counsel initially stated that "[w]e have fingerprints and we do . . . best efforts deduplication"; and later that Data Platform relies instead on the more conventional "address pointers" and that "we don't use fingerprints."  Docket # 63 at pp. 9, 34, 35; see also SAC at ¶24 (quoting Springpath presentation that "we built our entire file system in fingerprints").  Springpath's own apparent confusion over Data Platform's underlying technology demonstrates the need for discovery to illuminate whether that technology is infringing.

Third, Springpath's argument is something of a straw man: Springpath writes that globally-unique and content-derived fingerprints are "characterized by SimpliVity itself as the allegedly distinguishing innovation of the '799 patent," Docket # 41 at p. 9 (citing '799 Patent), but this is not so.  To be sure, the '799 Patent discusses these features, but nowhere does it limit its ingenuity to them.  Indeed, the SAC states flatly, "The claimed inventions use object fingerprints," and the '799 Patent's abstract lists globally-unique and content-derived fingerprints as two amid several of the patent's key features.  See SAC at ¶ 10; Docket # 38-1 at p. 2.  Thus, to consider the '799 Patent in its entirety and reduce its novelty to one or two features which Springpath (correctly) states SimpliVity has not alleged Data Platform to mimic, is not quite to shoot an arrow and draw a target around it, but instead to draw a target away from where the arrow has landed and then blame the archer for missing the mark.[9]

As applied then, the Twombly/Iqbal framework renders SimpliVity's direct infringement allegations well-pled.  Like the plaintiff in Incom, SimpliVity has described its own patent and identified a competing product which performs the same function.  See SAC at ¶¶ 8, 22 ("SimpliVity's products addressed technology shortcomings by converging the functionalities of numerous disparate products . . . into 'all-in-one' products. . . . Springpath makes, uses, sells, and offers to sell infringing technology, including its Data Platform, to develop and operate computer systems . . . by leveraging SimpliVity's patented file system and method.").  This suffices at the pleading stage, and accordingly the court concludes that SimpliVity has adequately alleged Data Platform to directly infringe the '799 Patent.

---

[9] Context further supports this reading: the '799 Patent's abstract describes a "method and apparatus . . . wherein a namespace file system accesses an object store in which data, metadata and files are objects, each object having a globally unique and content-derived fingerprint and wherein object references are mapped by the fingerprints."  See Docket # 38-1 at p. 2.  Notwithstanding Springpath's "prior art" contentions, this construction hardly suggests the fingerprints' globally-unique and content-derived natures to be the centerpiece of the patent's technology.

B.     Indirect Infringement

1.     Knowledge of the '799 Patent

Both of SimpliVity's indirect infringement claims (*i.e.* contributory and induced

infringement) require allegations of Springpath's knowledge of the '799 Patent.  See, e.g.,

Commil USA, LLC v. Cisco Sys., Inc., 135 S. Ct. 1920, 1926 (2015) (citing Aro Mfg. Co. v.

Convertible Top Replacement Co., 377 U.S. 476, 488 (1964)).  This raises the preliminary

question of whether Springpath's post-suit knowledge of the patent (*i.e.* that obtained through

Springpath's receipt of SimpliVity's complaint(s)) satisfies this element.  If so, SimpliVity need

not allege Springpath's pre-suit awareness of the '799 Patent.  The court concludes that post-suit

knowledge does not suffice for claims of indirect infringement alleged to have occurred pre-suit,

but that SimpliVity nonetheless satisfies this prong by way of Springpath's pre-suit knowledge.

Both conclusions now are addressed in turn.

i.     Post-Suit Knowledge

There exists a straightforward split of authority as to whether post-suit knowledge of a

patent satisfies the knowledge element for indirect infringement claims.  See, e.g., Zond, Inc. v.

SK Hynix Inc., No.13 Civ. 11570, 2014 WL 346008, at *3 (D. Mass. Jan. 31, 2014) ("District

courts are divided over the issue of whether pre-suit knowledge of a patent-in-suit is required to

support an initial claim for indirect infringement.  The Federal Circuit has not as yet addressed

the issue.") (parentheses omitted); compare, e.g., Aguirre v. Powerchute Sports, LLC, No. 10

Civ. 702, 2011 WL 2471299, at *3 (W.D. Tex. June 17, 2011) ("To the extent [plaintiff] relies

on knowledge of [his] patent after the lawsuit was filed, such knowledge is insufficient to plead

the requisite knowledge for indirect infringement.") (citing Xpoint Technologies v. Microsoft

Corp., 730 F.Supp.2d 349, 356 (D. Del. 2010)) with Memory Integrity, LLC v. Intel Corp., No.

15 Civ. 262, 2015 WL 4251026, at *2 (D. Or. July 13, 2015) ("Knowledge of the patent is straightforward: Service of the complaint provides the defendant with notice of the patent's existence, and knowledge of the patent as of the date of service is sufficient.") (citing Black Hills Media, LLC v. Pioneer Corp., 2013 WL 8540141, at *2 (C.D. Cal. Sept. 24, 2013)).

It is important to define at the outset the scope of this discord.  As explained by the court in Proxyconn Inc. v. Microsoft Corp., No. 11 Civ.  1681, 2012 WL 1835680 (C.D. Cal. May 16, 2012), indirect infringement claims "require that defendant's conduct—inducing or contributing to another's infringement—occur *after* the defendant knew[ of the] patent-in-suit." Id. at *5 (citing cases).  The issue, therefore, is whether a plaintiff may "bootstrap the knowledge Defendants *now* have based on Plaintiff's filing of the Complaint onto defendant's acts before Plaintiff filed its complaint." See id.  In the present case, this translates into whether SimpliVity may impose indirect infringement liability for actions predating September 15, 2015 (when Springpath was served with SimpliVity's original Complaint), based on no more than Springpath's knowledge of the '799 Patent obtained through its receipt of that pleading.

Significantly, although the court ultimately will conclude that such bootstrapping is improper, this does not preclude a Complaint-based finding of knowledge for purposes of *post*-September 15, 2015 activity.  Indirect infringement "'necessarily includes the requirement that [the alleged infringer] knew of the patent' at the time it was committing the allegedly infringing activities." Xpoint Techs., Inc. v. Microsoft Corp., 730 F. Supp. 2d 349, 356-57 (D. Del. 2010) (quoting Mallinckrodt, Inc. v. E-Z-Em Inc., 670 F. Supp. 2d 349, 354 (D. Del. 2009)).  With this notion underlying the knowledge element, the court sees no reason why service of the complaint could not support liability for allegedly infringing activity post-dating the service of the Complaint in September 2015.  At bottom then, the complaint survives dismissal on this ground

insofar as it alleges Springpath's continued infringement following service of the Complaint. See SAC at ¶¶ 40, 41, 51, 52, 61.  The question becomes whether such service may serve as the predicate for liability arising from actions before that date.  That brings the discussion back to the question, resulting in the aforementioned split of authority, whether post-suit knowledge of a patent satisfies the knowledge element for pre-suit indirect infringement claims.  The court answers this question in the negative.

In light of the conflicting authority, much of the parties' briefing centers on their respective interpretations of Select Retrieval, LLC v. Bulbs.com Inc., No. 12 Civ. 10389, 2012 WL 6045942 (D. Mass. Dec. 4, 2012), in which District Judge Hillman wrote that he "agree[s] with the cases cited that the filing of a law suit is not enough to support [a] claim for indirect infringement," id. at *6, a statement which naturally supports Springpath's position.  SimpliVity thus counters that this statement was *dictum*, citing Zond, Inc. v. Fujitsu Semiconductor Ltd., 990 F. Supp. 2d 50 (D. Mass. 2014) which expressly referred to it as such.  See id. at 56 n.2 ("In [Select Retrieval], however, the judge was not required to decide on th[e] issue [of post-suit knowledge] and consequently all statements are *obiter dicta*.").

The court finds Springpath has the better argument.  First, even if the remark was deemed *obiter dicta*, the characterization would be of no moment.  While true that *obiter dicta* "is not binding as authority or precedent within the *stare decisis* rule," see id., the question here is not one of precedent.  To the contrary, both parties have cited ample authority for their respective views on this issue, and Select Retrieval—or any other district court decision, for that matter— does not tip the scale.  What it does, however, is reflect the Judge Hillman's approval for the line of authority that the filing of a complaint does not suffice for knowledge purposes.  This holds true even if the statement at issue was *obiter dictum*.

Further, regarding the contested context of the statement in <u>Select Retrieval</u>: Judge Hillman had granted the defendant's motion to dismiss on separate grounds—namely, "[b]ecause the allegations fall woefully short of establishing a plausible claim for contributory infringement or infringement by inducement." <u>See</u> 2012 WL 6045942, at *5. The court made clear it was preemptively addressing the question of post-suit knowledge because the plaintiff was granted leave to amend its complaint: "If [plaintiff] chooses to amend its Complaint . . .[,] it is on notice that to survive a second motion to dismiss, it must allege facts which plausibly establish [defendant] had the requisite [pre-suit] knowledge." <u>See id.</u> at *5-6.

Given the context in which Judge Hillman's statement appears, the court respectfully disagrees with <u>Zond</u>'s interpretation that the <u>Select Retrieval</u> statement was *obiter dictum*, a term upon which the Supreme Court of Illinois has offered the following useful exposition:

> The term "*dictum*" is generally used as an abbreviation of *obiter dictum*, which means a remark or opinion uttered by the way. Such an expression or opinion as a general rule is not binding as authority or precedent within the *stare decisis* rule. On the other hand, an expression of opinion upon a point in a case argued by counsel and deliberately passed upon by the court, though not essential to the disposition of the cause, if *dictum*, is a judicial *dictum*. And further, a judicial *dictum* is entitled to much weight, and should be followed unless found to be erroneous.

<u>Cates v. Cates</u>, 156 Ill. 2d 76, 80 (1993) (citing authorities) (internal citations omitted). In light of this distinction, this court finds that Judge Hillman's remark was essential to a component of the court's disposition of the motion to dismiss; namely, that it was without prejudice, thereby inviting the plaintiff to amend the complaint. Such relief would not have the intended effect of allowing the plaintiff to preserve its indirect infringement claims through amendment, absent Judge Hillman's qualification that the amendment must allege pre-suit knowledge. Hence in this court's view, Judge Hillman's remark is best viewed as no less than a judicial *dictum*, perhaps

even precedential, and "is entitled to much weight, and should be followed unless found to be erroneous."  See id.

Additionally, the approach espoused by Springpath and embraced in Select Retrieval strikes this court as more sensible than that advanced by SimpliVity.  The suggested "knowledge via filing" framework dilutes the knowledge requirement to the point of meaninglessness, since by virtue of being sued for infringement, a party necessarily is aware of the patent-in-suit.  See Bonutti Skeletal Innovations, LLC v. Linvatec Corp., et al., 12 Civ. 1379 (M.D. Fla. 2012) (Apr. 2, 2013) (unpublished opinion, Docket # 32 at p. 6) (writing that "[i]f post-suit notification were permissible, then the knowledge / willful blindness[10] requirement would be meaningless – *of course* alleged infringers have actual knowledge of the patent(s) at issue once they have received the complaint" and noting "the logical inconsistency between the Global-Tech holding (the plaintiff must allege that the defendant has actual knowledge of or willful blindness to the patent) and allowing the complaint to provide initial notice of the patent's existence."); see also SynQor, Inc. v. Artesyn Techs., Inc., 709 F.3d 1365, 1380 (Fed. Cir. 2013) ("[T]he jury's finding of liability for contributory infringement demonstrates the jury found each Defendant had actual knowledge of the '190 Patent *prior to suit*.") (emphasis added).[11]  Moreover, the more

_____

[10] SimpliVity nowhere argues that Springpath was willfully blind to the '799 Patent's existence.

[11] Policy also militates in favor of this approach.  Consider a savvy patent holder who is aware of indirect infringement but unable to demonstrate the alleged infringer knows of the patent-in-suit.  Setting aside the doctrine of laches, if post-filing knowledge were held to suffice, the patentee could refrain from practicing its patent, avoid informing the alleged infringer of the patent's existence, and then bring a lawsuit knowing that the knowledge prong automatically will be satisfied through the complaint's filing.  Conversely, if post-suit knowledge were held insufficient, the patentee would be forced to advise the infringer of the patent before bringing a lawsuit.  Thus, one approach incentivizes litigation in place of innovation, while the other requires patent holders to make potential defendants aware of alleged infringement before entering the courthouse.  Accord Proxyconn, 2012 WL 1835680, at *5 ("[R]equiring a Plaintiff to plead knowledge based on facts other than the filing of the present lawsuit furthers judicial economy and preserves parties' resources by encouraging resolution prior to filing a lawsuit.").

permissive approach would undermine Rule 11's requirement that factual contentions have—or reasonably will be shown to have—evidentiary support.  See Fed. R. Civ. P. 11(b)(3).

Lastly, SimpliVity posits that in cases involving amended complaints, the filing of an earlier complaint may satisfy the knowledge requirement in the amended filing.[12]  While true that this argument reflects this matter's posture—at issue here is SimpliVity's third complaint—the court disagrees with the cases permitting what it views as an gratuitous loophole: if an amended complaint can establish knowledge of a patent by doing no more than referencing an earlier-filed complaint, a plaintiff could file suit without alleging the requisite knowledge of the patent-in-suit and then, armed with the satisfaction of the knowledge prong by virtue of the prior pleading, nominally amend its complaint.  As noted by Springpath, this case highlights the potential for such abuse[13]—SimpliVity filed its original complaint, and roughly one month later filed an amended complaint that corrected a typographical error.  See Docket # 1, 16, 19.  If Zond's post-suit knowledge were held sufficient, SimpliVity in its First Amended Complaint could have used the original complaint as a bootstrap for the knowledge requirement.

Accordingly, the court recommends that the filing of the SAC (or the prior complaints) be held insufficient to demonstrate Springpath's knowledge of the '799 Patent for purposes SimpliVity's indirect infringement claims predating service of the Complaint.  The court then proceeds to consider whether SimpliVity adequately has alleged Springpath's pre-suit knowledge of the '799 Patent, a question which it answers in the affirmative.

---

[12] Notably, SimpliVity's main source of authority for this secondary argument (Zond v. SK Hynix, supra) expressly undercuts the logic of its primary contention that the filing of any complaint—amended or otherwise—satisfies the knowledge prong.  See 2014 WL 346008, at *3 ("Under this ruling, a plaintiff may not make an allegation of post-filing knowledge in the *initial* complaint.").  By Zond's logic, it is *only* within the context of an amended complaint that post-filing knowledge may suffice.

[13] The court does not suggest SimpliVity has acted in bad faith in this (or any other) regard; only that this matter illustrates the seamlessness with which it could have done so.

ii.  <u>Pre-Suit Knowledge</u>

SimpliVity's indirect infringement claims require plausible allegations that Springpath had pre-suit knowledge of the '799 Patent.  SimpliVity here hangs its hat on several allegations: it and Springpath being competitors, the ease of online patent research, Springpath's pre-suit investigation at the trade show of SimpliVity's technology, Mr. Yadappanavar's contemporaneous efforts to remain anonymous during the trade show interaction, and Springpath's subsequent development of a product which mimics the technology underlying the '799 Patent.  <u>See</u> Section II, <u>supra</u>.  SimpliVity argues that taken together, these factors allow for the reasonable inference that Springpath had pre-suit knowledge of the '799 Patent.  Springpath counters that the alleged trade show conversation cannot support a finding of knowledge since it occurred before the '799 Patent issued; thus "the only facts mentioned in the SAC regarding Springpath's knowledge date to a period before the patent even existed."  <u>See</u> Docket # 52 at pp. 9-10 (emphasis removed).

The court infers from the SAC Springpath's pre-suit knowledge of the '799 Patent. SimpliVity has alleged that Springpath—a sophisticated entity and SimpliVity competitor— surreptitiously investigated SimpliVity's technology (albeit before the '799 Patent was issued) and thereafter developed a product which mimics the technology in the '799 Patent.  Read in the light most favorable to SimpliVity, this narrative lends support to a reasonable inference that Springpath knew of the '799 Patent before this litigation.

A closer look at the timing and circumstances of Springpath's investigation further supports a finding of knowledge.  According to the SAC, Springpath's investigation of SimpliVity's technology occurred at least in part at a trade show in 2012.  <u>See</u> SAC at ¶ 18.  At that time, SimpliVity's '799 Patent application was pending and, again as alleged, could be

18

viewed on publicly-available websites such as USPTO.gov.  Id. at ¶ 30.  After the trade show,

Springpath released Data Platform[14] which, it is alleged, leverages SimpliVity's patented file

system and method.  Id. at ¶¶ 21-22.  SimpliVity's patent then issued on July 2, 2013.  Similarly,

the circumstances of Springpath's investigation help support a reasonable inference of pre-suit

knowledge of the '799 Patent.  It is alleged that the individual who investigated SimpliVity's

technology at the trade show was one of Springpath's co-founders.  It also is alleged that this

individual affirmatively misled SimpliVity's representative about his identity, and never

disclosed his connection to Springpath.  Id. at ¶¶ 18-20.

Perhaps in isolation, none of these allegations is enough to raise SimpliVity's entitlement

to relief from speculative to plausible.  Collectively however, they suffice, even if barely so, to

support a reasonable inference of Springpath's pre-suit knowledge of the '799 Patent.  Indeed, it

is difficult to envision the alternative scenario: a sophisticated party, after allegedly investigating

and in some regard—the extent to which likely will become clear through discovery—copying a

competitor's technology, being oblivious to the patent reflecting that technology.  While such a

situation is possible, it certainly is not likely enough to render implausible an inference to the

contrary.[15]

---

[14] Glaringly absent from the SAC is Data Platform's release date.  However, construing the SAC in the light most favorable to SimpliVity (and in conjunction with the fact that Springpath never has argued that Data Platform's release preceded July 2, 2013), the court infers from the allegation that "Springpath released its Data Platform product, which mimics SimpliVity's patented technology" that Data Platform was released after the technology in the '799 Patent became patented; i.e. after July 2, 2013.

[15] Springpath cites as support Boundaries Sols. Inc. v. CoreLogic, Inc., No. 14 Civ. 00761, 2014 WL 7463708 (N.D. Cal. Dec. 30, 2014) and Vasudevan Software, Inc. v. TIBCO Software Inc., No. 11 Civ. 06638, 2012 WL 1831543, (N.D. Cal. May 18, 2012), both of which the court finds distinguishable.  Unlike the SAC, the CoreLogic complaint lacked any "allegation that [defendant] ever knew about the [patent-in-suit] before [plaintiff] filed this suit," and the Vasudevan plaintiff provided "no indication . . . how [defendant] may have later discovered" the patent-in-suit.  See 2014 WL 7463708, at *2; 2012 WL 1831543, at *2.

Finally, the court acknowledges Springpath's argument that the only factual allegations supporting this element relate to a period before the '799 Patent issued.  Cf., e.g., State Indus., Inc. v. A.O. Smith Corp., 751 F.2d 1226, 1236 (Fed. Cir. 1985) ("Filing an application is no guarantee any patent will issue and a very substantial percentage of applications never result in patents.  What the scope of claims in patents that do issue will be is something totally unforeseeable.").  But this consideration ultimately is of no moment.  While true that indirect infringement requires actual knowledge of the patent-in-suit, see, e.g., SynQor, Inc., 709 F.3d at 1379 (quoting Glob.-Tech Appliances, Inc. v. SEB S.A., 563 U.S. 754, 765 (2011)), it equally is true that "knowledge of the patents may be proven by either direct or circumstantial evidence." SynQor, Inc. v. Artesyn Techs., Inc., No. 07 Civ. 497, 2011 WL 3624957, at *3 (E.D. Tex. Aug. 17, 2011), aff'd, 709 F.3d 1365 (Fed. Cir. 2013).  It is entirely plausible that discovery will reveal that Springpath, relying upon information concerning SimpliVity's technology gleaned through Springpath's pre-'799 Patent investigation, learned of the patent once it issued in July 2013.  The court thus finds SimpliVity has adequately alleged Springpath's pre-suit knowledge of the '799 Patent.

## 2.  Knowledge of Third-Party Infringement

Springpath contends that SimpliVity has failed to allege Springpath's knowledge of direct third-party infringement (even assuming its existence), which is required to support indirect infringement claims.  See, e.g., Commil, 135 S. Ct. at 1926 (citing Aro Mfg. Co., 377 U.S. at 488).  Springpath cites several cases in support, most of which are distinguishable on the ground (discussed below) that the courts there found no allegations of a lack of substantial non-infringing use for the accused products.  See Superior Indus., LLC v. Thor Glob. Enterprises Ltd., 700 F.3d 1287, 1296 (Fed. Cir. 2012); Intellectual Ventures I LLC v. Bank of Am., Corp.,

No. 13 Civ. 358, 2014 WL 868713, at *6 (W.D.N.C. Mar. 5, 2014); Bonutti Skeletal Innovations

LLC v. Smith & Nephew, Inc., No. 12 Civ. 1111, 2013 WL 6058472, at *2 n.5 (D. Del. Nov. 18,

2013).  This distinction is critical: where, as here, an accused product allegedly possesses only an

infringing use, a defendant can infer third-party infringement based on no more than its

customers using the product.  Without this element—as in Springpath's cited cases—such an

inference does not follow.

This distinction also undercuts Springpath's related argument that SimpliVity cannot

demonstrate knowledge of direct infringement because the SAC does not explain how the

alleged infringement occurred.  Cf. Versata Software, Inc. v. Cloud9 Analytics, Inc., No. 12 Civ.

925-LPS, 2014 WL 631517, at *4 (D. Del. Feb. 18, 2014) ("Plaintiffs have simply identified the

accused products and generically alleged that their use somehow infringes the asserted patents."),

report and recommendation adopted, No. 12 Civ. 925, 2014 WL 1091751 (D. Del. Mar. 14,

2014).  Here by contrast, direct infringement may be inferred without SimpliVity specifying how

it occurred.[16]  Accordingly, the court finds satisfied the indirect infringement requirement of

Springpath's knowledge of direct third-party infringement.

3.  Contributory Infringement

The statute governing contributory infringement states:

> Whoever offers to sell or sells within the United States or imports
> into the United States a component of a patented machine,
> manufacture, combination or composition, or a material or apparatus
> for use in practicing a patented process, constituting a material part
> of the invention, knowing the same to be especially made or
> especially adapted for use in an infringement of such patent, and not

---

[16] Lastly, Springpath also cites Chalumeau Power Sys. LLC v. Alcatel-Lucent, No. 11 Civ. 1175, 2012 WL 6968938 (D. Del. July 18, 2012) which is distinguishable in that the plaintiff there did not allege the defendant instructed its customers on using the accused product.  See Chalumeau Docket # 28.  It thus stood to reason that "there is no factual basis at all to conclude that the defendants knew that the actions of others who obtained the OmniSwitch constituted infringement."  Chalumeau, 2012 WL 6968938, at *1.

> a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer.

35 U.S.C. § 271(c).  Thus, "[l]ike induced infringement, contributory infringement requires knowledge of the patent in suit and knowledge of patent infringement."  Commil, 135 S. Ct. at 1926 (citing Aro Mfg. Co. v. Convertible Top Replacement Co., 377 U.S. 476, 488 (1964)).  Additionally, a contributory infringement plaintiff must "plead facts that allow an inference that the components sold or offered for sale have no substantial non-infringing uses."  In re Bill of Lading, 681 F.3d at 1337 (citing Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc., 424 F.3d 1293, 1312 (Fed. Cir. 2005)).  Lastly, the accused product must be "known by the party to be especially made or especially adapted for use in an infringement."  Id. (quoting 35 U.S.C. § 271(c) and citing Medtronic, 424 F.3d at 1312) (internal quotation marks omitted).  Because the court has found the first two elements to be satisfied, see Sections IV.B.1.ii, IV.B.2, supra, it proceeds to consider whether SimpliVity has alleged Data Platform to lack a substantial non-infringing use.

### i.   Substantial Non-Infringing Use

The question of Data Platform's substantial non-infringing use *vel non* is vastly important—beyond serving as a standalone contributory infringement requirement, this issue has impacted the court's direct infringement calculus, and likewise will color the analyses that follow concerning whether Data Platform was especially made or adapted to infringe and whether Springpath specifically intended to encourage infringement.  As discussed below, the court finds the answer to favor SimpliVity.

The SAC alleges that "SimpliVity's reasonable investigation [has shown] the Data Platform product has no known substantial non-infringing use.  A reasonable opportunity for discovery will likely provide further evidentiary support that Springpath's Data Platform product

has no substantial non-infringing use." <u>SAC</u> at ¶ 49.  As support, it relies on the following allegations:

- In videos[17] describing Data Platform's structure and "normal and encouraged operation," Mr. Mahalingam failed to identify any non-infringing use for Data Platform, outlined Data Platform's infringing use of objects and object stores, and stated, "We track fingerprint and content because our entire file system is based on fingerprints, right, because we do dedupe.  So we built our entire file system in fingerprints," <u>id.</u> at ¶¶ 24-26, 49;

- Springpath data sheets confirm such use, <u>id.</u> at ¶ 26 and Ex. B;

- Springpath's website offers videos[18] on installation and use of Data Platform, and installation and operation of Data Platform per Springpath's instructions necessarily result in infringement of at least claims 1 and 19 of the '799 patent, respectively, <u>id.</u> at ¶ 50;

- Springpath does not provide users with instructions that allow for a non-infringing use, <u>id.</u> at ¶ 44; and

- Despite knowing its instructions result in infringement, Springpath "continues to instruct and encourage customers to use the product in an infringing manner."  <u>Id.</u> at ¶ 44.

---

[17]    <u>See</u> Springpath HALO Architecture Deep Dive, <u>available at</u> <u>https://www.youtube.com/watch?v=krmkywnz970</u> (last visited July 11, 2016) (eighty-eight-minute presentation by Mr. Mahalingam addressing, "What makes up the distributed scale out hardware agnostic log-structure objects (HALO) data platform.  What makes Springpath's approach unique?"); Springpath Data Platform and HALO Architecture Overview, <u>available at</u> <u>http://springpathinc.com/resources.php</u> (last visited July 11, 2016) (describing construction, operation, and data management benefits of Data Platform); <u>see also</u> <u>https://www.youtube.com/c/springpathinc/videos</u>.

[18] <u>See</u> Springpath Data Platform Installer, <u>available at</u> <u>http://springpathinc.com/resources.php</u> (last visited July 11, 2016) (instructions on installing Data Platform); Springpath Data Platform Setup and Configuration, <u>available at</u> <u>http://springpathinc.com/resources.php</u> (last visited July 11, 2016) (instructions on Data Platform configuration and use); <u>see also</u> <u>https://www.youtube.com/c/springpathinc/videos</u>.

Springpath argues that (1) aside from the SAC's "irrelevant allegations," SimpliVity merely has recited the statutory requirements for contributory infringement; and (2) even if SimpliVity had alleged no non-infringing use, it has not pled Springpath's knowledge thereof. See Docket # 41 at pp. 17-18.[19]

Springpath's Twombly/Iqbal attack falls short of its mark.  Initially, the court agrees with Driessen v. Sony Music Entm't, No. 09 Civ. 0140, 2013 WL 4501063 (D. Utah Aug. 22, 2013) that "it is impossible to plead with specificity something that does not exist' and that [requiring this] is therefore illogical."  Id. at *2 (internal quotation marks omitted).  Confirmation of the existence of "something that does not exist" necessarily will require discovery and expert analysis.  Further and as described, the SAC contains several substantive allegations— SimpliVity's investigation, Springpath's Data Platform presentation, and the notion that Data Platform's installation and operation result in infringement—that, read in the light most favorable to SimpliVity, render plausible the inference that Data Platform possesses no substantial non-infringing use.  Beyond its tautological characterization of these allegations as irrelevant, Springpath does not substantively counter them.

Springpath cites (tellingly, without substantively discussing) several cases in purported support, but none is on-point.  Straight Path IP Grp., Inc. v. Vonage Holdings Corp., No. 14 Civ. 502, 2014 WL 1266623 (D.N.J. Mar. 26, 2014) dismissed a contributory infringement claim where the complaint's "statements are parroting the language of the necessary elements to support a contributing infringement claim."  Id. at *3; compare SAC at ¶¶ 25, 43, 44, 49, 50 with StraightPath Docket # 23 at ¶¶ 42, 55, 68, 80 (extent of allegations in this regard was that

---

[19] Springpath also argues that Data Platform does not infringe at all, rendering meaningless the assertion that there is no non-infringing use.  As discussed in Section IV.A, supra, the court finds that SimpliVity has adequately pled direct infringement, a conclusion that disposes of this argument.

"[p]rior to the filing of this lawsuit, [defendant] was aware that the Accused Products . . . have no substantial non-infringing uses"); CAO Grp., Inc. v. Sybron Dental Specialties, Inc., No. 12 Civ. 1062, 2014 WL 119134, at *2-3 (D. Utah Jan. 10, 2014) (court held insufficient the "sparse[,] . . . threadbare and conclusory" allegation that "the Accused Products . . . have no substantial use other than to be used by Defendants' customers [in manner] that infringes certain claims of the various Patents") (internal quotation marks omitted); Pragmatus Telecom, LLC v. Ford Motor Co., No. 12 Civ. 92, 2012 WL 2700495, at *1 (D. Del. July 5, 2012) ("The allegations [that] the infringing systems . . . are not staple articles of commerce suitable for substantial non-infringing use are supported by no facts.") (internal quotation marks omitted).  SimpliVity has pled more to demonstrate that Data Platform has no non-infringing use, and so this argument by Springpath fails.

What remains is the contention that even if Data Platform has no non-infringing use, SimpliVity has not adequately pled Springpath's knowledge thereof.  U.S. Ethernet Innovations, LLC v. Netgear, Inc., No. 13 Civ. 2262, 2013 WL 4112601 (N.D. Cal. Aug. 12, 2013) is Springpath's strongest cited case, but ultimately unavailing.  Although the court there declined to infer the lack of substantial non-infringing use, see id. at *3, as above, the operative allegations were far weaker than those in the SAC.  Indeed, the Netgear plaintiff did not even plead this element, see Netgear Docket # 1, instead relying for purposes of this requirement on its allegation "that the accused products embody the patented invention and that customers who operate Netgear's products in accordance with its instructions directly infringe on the patents-in-suit."  See 2013 WL 4112601, at *3 (internal quotation marks omitted).  By contrast, SimpliVity's SAC alleges not only this element, but also facts that inferentially support knowledge of no non-infringing use.  As a result, although SimpliVity does not expressly allege

Springpath's knowledge in this regard, such an inference is entirely plausible.[20]  The court thus concludes that SimpliVity has adequately alleged that Data Platform has no substantial non-infringing use, as well as Springpath's knowledge thereof.

ii.     Made or Adapted to Infringe

A final requirement for SimpliVity's contributory infringement claim is Springpath's knowledge that Data Platform "is especially made or especially adapted for use in an infringement of" the '799 Patent.  See 35 U.S.C. § 271(c).  Because the parties' discussion of this element bleeds into those addressed above, this issue is considered only briefly here.

The SAC states that "Springpath knows that its accused Data Platform product is especially made or especially adapted for use in an infringement of the '799 patent through, for example, the product's infringing use of fingerprints, objects, and object stores."  SAC ¶ 59.[21] As support, it discusses Springpath's continued promotion of Data Platform after receipt of the Complaint in September 2015.  See id.  Springpath argues that the Complaint did no more than provide notice of the accusation of infringement (rather than notice of infringement), which is insufficient.  The court disagrees.  Although the SAC's only express discussion of this element concerns the post-suit period, the (pre-and post-suit)[22] events alleged in the SAC—particularly

---

[20] Additionally, the court disagrees with Netgear's reasoning that "the allegation that the products infringe if used in accordance with [defendant's] instructions implies that the products can be used in a non-infringing manner if used in a way that deviates from those instructions."  2013 WL 4112601, at *3.  It strikes as an overreach (and a false contrapositive) to assume that if a product infringes when used in one manner, it does not infringe if used otherwise.

[21] As discussed, while SimpliVity ultimately will need to do more than demonstrate, for example, Data Platform's "infringing use of fingerprints" (which themselves are not novel), for present purposes the court finds adequate the allegations of Data Platform's infringing use.  See generally Section IV.A, supra.

[22] Indeed, the SAC links to a YouTube video published in March 2015—several months before the filing of the Complaint—in which Mr. Mahalingam "describes the specific structure and operation of the [allegedly] infringing product."  See SAC at ¶ 59.

Springpath's investigation of SimpliVity's technology and development of a similar product—allow for the plausible inference of Springpath's awareness that Data Platform was especially made to infringe.[23]

### 4. Induced Infringement

Per 35 U.S.C. § 271(b), "[w]hoever actively induces infringement of a patent shall be liable as an infringer."  Induced infringement claims entail three elements.  One "crucial element of induced infringement is that the inducer must have actual or constructive knowledge of the patent."  Insituform Techs., Inc. v. Cat Contracting, Inc., 161 F.3d 688, 695 (Fed. Cir. 1998).  Second, the alleged infringer must have knowledge of underlying direct infringement by a third party.  See, e.g., Glob.-Tech Appliances, Inc. v. SEB S.A., 563 U.S. 754, 766 (2011) ("[I]nduced infringement under § 271(b) requires knowledge that the induced acts constitute patent infringement.").  Third is a showing of specific intent to encourage infringement.  See, e.g., DSU Med. Corp. v. JMS Co., 471 F.3d 1293, 1306 (Fed. Cir. 2006) ("[T]he inducer must have an affirmative intent to cause direct infringement. . . . [I]nducement requires that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement.") (quoting MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp., 420 F.3d 1369, 1378 (Fed. Cir. 2005)) (internal quotations omitted).  As above, the court has

---

[23] SimpliVity cites Chrimar Sys., Inc. v. Adtran, Inc., No. 15 Civ. 618, 2015 WL 8488485 (E.D. Tex. Nov. 18, 2015), report and recommendation adopted, No. 15 Civ. 618, 2015 WL 8479072 (E.D. Tex. Dec. 10, 2015), which involved similar allegations that satisfied this requirement.  See id. at *3.  The court declines to principally rely on Chrimar, since the conclusion there rested on the defendant's *post-suit* knowledge that its product was especially made or adapted to infringe, see id., and as discussed, the court here finds post-suit knowledge insufficient purposes of attaching liability to pre-suit actions.  See Section IV.B.1.i, supra.  As noted, however, the SAC alleges that "Springpath knows that its accused Data Platform product is especially made or especially adapted for use in an infringement of the '799 patent," see SAC at ¶ 59, and a distinction may be drawn between the sufficiency of post-suit knowledge of the '799 Patent itself as compared to knowledge that Data Platform was especially made or adapted to infringe (thus permitting Chrimar to further support SimpliVity's satisfaction of this element).  Further, at bottom, Chrimar supports SimpliVity's fulfillment of this prong within the post-suit period.

considered (and found satisfied) the first two elements, and so proceeds to address specific intent, regarding which it reaches a similar conclusion.

i.   Specific Intent

The specific intent required for SimpliVity's induced infringement claim is somewhat slippery, since "[t]he statute does not define whether the purported infringer must intend to induce the infringement or . . . merely intend to engage in the acts that induce the infringement regardless of whether it knows it is causing another to infringe."  See DSU Med. Corp. v. JMS Co., 471 F.3d 1293, 1305 (Fed. Cir. 2006).  The Federal Circuit has clarified, however, that "mere knowledge of possible infringement by others does not amount to inducement; specific intent and action to induce infringement must be proven."  Warner-Lambert Co. v. Apotex Corp., 316 F.3d 1348, 1364 (Fed. Cir. 2003).  Thus,

> if an entity offers a product with the object of promoting its use to infringe, as shown by clear expression or other affirmative steps taken to foster infringement, it is then liable for the resulting acts of infringement by third parties. . . . [T]he alleged infringer must be shown . . . to have *knowingly* induced infringement, not merely knowingly induced the *acts* that constitute direct infringement. . . . It must be established that the defendant possessed specific intent to encourage another's infringement and not merely that the defendant had knowledge of the acts alleged to constitute inducement.  The plaintiff has the burden of showing that the alleged infringer's actions induced infringing acts and that he knew or should have known his actions would induce actual infringements.

DSU, 471 F.3d 1293 at 1305-06 (citing Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd., 545 U.S. 913 (2005) and quoting Manville Sales Corp. v. Paramount Sys., Inc., 917 F.2d 544, 553 (Fed. Cir. 1990)) (internal quotation marks omitted).[24]  Stated otherwise, "inducement requires evidence of culpable conduct, directed to encouraging another's infringement, not

---

[24] The court notes that DSU involved an appeal of a jury verdict, not a motion to dismiss.

merely that the inducer had knowledge of the direct infringer's activities." Id. at 1306.  Finally, "[w]hile proof of intent is necessary, direct evidence is not required; rather, circumstantial evidence may suffice."  Water Techs. Corp. v. Calco, Ltd., 850 F.2d 660, 668 (Fed. Cir. 1988) (citing Moleculon Research Corp. v. CBS, Inc., 793 F.2d 1261, 1272 (Fed. Cir. 1986), cert. denied, 479 U.S. 1030 (1987)).

In relevant part, the SAC alleges that "Springpath specifically intends for its customers to use the Data Platform in an infringing manner, and actively entices them to do so. . . . Springpath's intent to induce infringement is demonstrated through its continued promotion of its Data Platform product since learning of the '799 patent[25] and its infringement."  SAC at ¶¶ 44, 46.  As indicated, see Section IV.B.2.i, supra, the sufficiency of these allegations hinges on whether use of Data Platform has a substantial non-infringing use.  To illustrate, Springpath cites Unisone Strategic IP, Inc. v. Life Techs. Corp., No. 13 Civ. 1278, 2013 WL 5729487 (S.D. Cal. Oct. 22, 2013), where the complaint "merely recite[d] the statutory language of § 271(c)" concerning, inter alia, the defendant's product allegedly possessing no substantial non-infringing use.  See id. at *5.  The plaintiff's allegations of specific intent—similar to those made here— were found wanting:

> Plaintiff further alleges Defendant "intentionally designs, manufactures, markets, promotes, sells, services, supports (including technical support), provides updated software, and educates its customers and suppliers about its SCMS software." Even taken as true, these allegations also[26] fail because they merely

---

[25] SimpliVity writes that Springpath has had notice of the '799 Patent "[s]ince at least September 15, 2015." See SAC at ¶ 44 (emphasis added); see also Docket # 1.  As noted, the court infers that Springpath was aware of the patent before this date.  See Section IV.B.1.ii, supra.

[26] "Also" refers to the fact that the court in Unisone found the complaint to be insufficient because "Plaintiff must allege 'more than just an intent to cause the acts that produce direct infringement.'"  2013 WL 5729487, at *3 (quoting Kyocera Wireless Corp. v. Int'l Trade Comm'n, 545 F.3d 1340, 1354 (Fed. Cir. 2008)).

> indicate that Defendant provides instruction, technical support, and training for using its own software, and nothing more.  As such, Plaintiff's allegations are conclusory and not sufficient to plausibly infer that Defendant had the specific intent to induce others to infringe.

Id. at *3.  This conclusion flows logically and smoothly from the plaintiff's failure to plausibly allege a lack of substantial non-infringing use.  That is—if Unisone had inferred a lack of non-infringing use, then allegations of marketing and instructions could have compelled the inference that the defendant specifically intended its product to infringe, since taken together, these allegations would have demonstrated "that the alleged infringer's actions induced infringing acts and that he knew or should have known his actions would induce actual infringements."  See DSU, 471 F.3d 1293 at 1306.

This framework is reflected in Zond v. Fujitsu, supra, which wrote that

> [plaintiff's] sole allegation regarding encouragement is that [defendant], through "advertising, marketing and sales activity," entices its original equipment and design manufacturers to use the allegedly infringing products.  Whilst a conclusory pleading, it seems illogical that the production, for sale, of goods, *for which there is no potential non-infringing use*, would not permit a reasonable inference, especially at the motion to dismiss stage that the manufacturer/importer intended to encourage infringement.

990 F. Supp. 2d at 58-59 (citing cases) (emphasis added) (internal citations omitted).

Conversely, "[w]here there are substantial non-infringing uses of an infringing product, intent to induce infringement cannot be inferred, even where the defendant has actual knowledge that some users may be infringing the patent."  Id. at 58 n.4; see also Vita-Mix Corp. v. Basic Holding, Inc., 581 F.3d 1317, 1329 and n.2 (Fed. Cir. 2009).  In sum therefore, the combination of (1) plaintiff's allegations of specific intent; and (2) the court's inference that Data Platform lacks a substantial non-infringing use, compels the conclusion that SimpliVity has satisfied the specific intent element.

C.      Willful Infringement

SimpliVity has alleged Springpath's infringement of the '799 Patent is willful.  See SAC

at ¶¶ 60-63.  This allegation's significance pertains to damages: in certain situations, "the court

may increase the damages up to three times the amount found or assessed."  35 U.S.C. § 284.

1.      Seagate

Until its recent abrogation, In re Seagate Tech., LLC, 497 F.3d 1360 (Fed. Cir. 2007),

governed willfulness.  While it still was binding law, Seagate essentially stood for three things.

One was that "an award of enhanced damages requires a showing of willful infringement. . . .

But, a finding of willfulness does not require an award of enhanced damages; it merely permits

it."  Seagate, 497 F.3d at 1368 (citing authorities).  Willfulness thus was a necessary, but not

always sufficient, condition to recovery of enhanced damages.

Seagate's primary (pre-abrogation) significance lay elsewhere—namely, in requiring

satisfaction of a formalistic two-part test for willfulness:

> to establish willful infringement, a patentee must show by clear and
> convincing evidence that the infringer acted despite an objectively
> high likelihood that its actions constituted infringement of a valid
> patent. . . . If this threshold objective standard is satisfied, the
> patentee must also demonstrate that this objectively-defined risk . .
> . was either known or so obvious that it should have been known to
> the accused infringer.

Id. at 1371.  Finally, Seagate held that "[a] patentee who does not attempt to stop an accused

infringer's activities [by moving for a preliminary injunction] should not be allowed to accrue

enhanced damages based solely on the infringer's post-filing conduct."  Id. at 1374.

2.      Halo

On June 13, 2016, after briefing and oral argument in the instant case, the Court decided

Halo Elecs., Inc. v. Pulse Elecs., Inc., 136 S. Ct. 1923 (2016), in which it abrogated much of

Seagate.[27]  Accordingly, the willfulness landscape has dramatically changed.  The parties have submitted supplemental briefing on this critical change in the law, see Docket # 65-67, to which the court now turns.[28]

Halo's bluntest attack on Seagate is levied on the latter's two-pronged test for willfulness. The Court primarily took issue with Seagate "requir[ing] a finding of objective recklessness in every case before district courts may award enhanced damages," and replaced Seagate with a framework whereby "district courts [may] punish the full range of culpable behavior. . . . in a manner free from the inelastic constraints of the Seagate test."  See id. at 1932-33.  Halo thus "eschew[ed] any rigid formula for awarding enhanced damages under § 284" and "commit[ted] the determination whether enhanced damages are appropriate to the discretion of the district court," while also advising courts "to take into account the particular circumstances of each case in deciding whether to award damages, and in what amount."  Id. at 1933-34 (quoting Highmark Inc. v. Allcare Health Mgmt. Sys., Inc., 134 S. Ct. 1744, 1748 (2014) (internal quotation marks omitted).  Significantly, Halo did not expressly upset—indeed, did not discuss at all—the portion of Seagate requiring a willful infringement plaintiff to have moved for a preliminary injunction.

Two aspects of Seagate/Halo thus are ripe for analysis.  First is whether SimpliVity may seek enhanced damages even though it did not move for a preliminary injunction.  If so, the court must determine the substantive question of whether SimpliVity has pled enough for its willfulness allegations to satisfy Twombly and Iqbal by way of Halo.  Both are answered in the affirmative.

---

[27] The court addresses below the question of how much, if any, of Seagate remains intact post-Halo.

[28] Because SimpliVity's claim for enhanced damages is tethered to its allegations of willfulness, the first element of Seagate noted above, a showing of willfulness, requires no further discussion.

3.      Preliminary Injunction Requirement

As noted, <u>Halo</u> did not address <u>Seagate</u>'s directive that a willful infringement plaintiff generally may not obtain enhanced damages where, as here, it did not move for a preliminary injunction.[29]  Accordingly, the court must consider whether this proscription remains in <u>Halo</u>'s wake.

Springpath argues that <u>Halo</u> does not upset <u>Seagate</u>'s requirement that a plaintiff seeking enhanced damages for post-filing conduct move for a preliminary injunction.  This court disagrees.  As noted, <u>Halo</u> makes no mention of <u>Seagate</u>'s preliminary injunction requirement, and without the benefit of post-<u>Halo</u> authority, the Court's silence in this regard could be interpreted as its implicit assent to <u>Seagate</u>'s preliminary injunction rule.  But <u>Halo</u>'s broader context suggests otherwise.  <u>Halo</u>'s thrust was a recognition that § 284 of the Patent Act prescribes a comprehensive grant of discretion to district courts to consider "the particular circumstances of each case in deciding whether to award damages, and in what amount," and to do so "in a manner free from the inelastic constraints of the <u>Seagate</u> test."  <u>Halo</u>, 136 S. Ct. at 1933-34.  The Court noted that § 284 "contains no explicit limit or condition" on enhanced damages, <u>id.</u> at 1931 (citing <u>Martin v. Franklin Capital Corp.</u>, 546 U.S. 132, 136 (2005)), suggesting that rigidly requiring willful infringement plaintiffs to move for a preliminary injunction—for that matter, rigidly imposing any prerequisite to recovery of enhanced damages—offends Congress' broad grant of discretion to district courts in the same manner as

---

[29] The court notes that SimpliVity's original Complaint and FAC request in passing that Springpath be preliminarily enjoined from infringing the '799 Patent.  <u>See</u> Docket # 1 at p. 6; Docket # 19 at p. 6.  However, (1) nowhere does SimpliVity either attempt to demonstrate satisfaction of the necessary elements for such relief, nor has it otherwise formally moved for it; (2) the SAC does not seek a preliminary injunction; and (3) neither in its opposition nor its supplemental briefing does SimpliVity argue that it has done so.  Therefore, notwithstanding SimpliVity's fleeting references to a preliminary injunction, the court finds on this record that it has not moved for such relief.

Seagate's willfulness test.  While true that "the Seagate test" is distinct from Seagate's preliminary injunction requirement, the court finds in Halo a wholesale supplanting of the Federal Circuit's "inelastic constraints" in favor of an approach that affords district courts the discretion to mete out damages as they see fit; with or without a plaintiff moving for a preliminary injunction.  Indeed, if in the midst of its derogation of Seagate, the Court had intended for a significant aspect of that case to remain intact, it likely would have said so.

Halo thus broadly rejects any formal restriction on a district court's discretion to award enhanced damages.  This unqualified reading of Section 284 cannot be squared with Springpath's argument that there exists a precondition to district courts' authority in this regard; *i.e.* that a willful infringement plaintiff must seek a preliminary injunction in order to recover enhanced damages.  In this court's view, Springpath's argument ignores the unanimous Court's interpretation of Section 284.

The court therefore concludes that like its two-part test, Seagate's rule against enhanced damages absent a motion for a preliminary injunction (or other unique circumstances) no longer applies.  This reading comports with Halo's guiding principle that "Section 284 gives district courts the discretion to award enhanced damages against those guilty of patent infringement," and that district courts should wield this power justly but freely.  See id. at 1934-35.  Accordingly, SimpliVity's failure to move for a preliminary injunction does not render unavailable an award of enhanced damages.[30]

_____

[30] In the event the District Judge deems Seagate's preliminary injunction requirement to remain intact, it then follows that SimpliVity's willfulness claim be dismissed.

The court agrees with DataQuill Ltd. v. High Tech Computer Corp., 887 F. Supp. 2d 999 (S.D. Cal. 2011) that "Seagate did not create a *per se* bar to claims for post-filing willful infringement where an injunction was not sought."  Id. at 1015.  Instead, "the determination of whether a patentee may pursue a claim for willful infringement based on post-filing conduct without seeking a preliminary injunction 'will depend on the facts of each case.'"  Id. (quoting Seagate).  Notwithstanding, Seagate left little room for a plaintiff

4.   Willful Infringement Allegations

In light of the above, the court now considers whether SimpliVity has pled enough for its willfulness claim to withstand dismissal.  As discussed, Seagate no longer controls this question,[31] and apart from its emphatic abrogation of Seagate's willfulness test, Halo itself

---

to recover enhanced damages where it did not move for a preliminary injunction.  The exception entails circumstances absent here.  In DataQuill, for example, the

> plaintiff no longer practiced the patents-in-suit, did not compete with defendant and had a history of licensing its patents.  Under those circumstances, the district court concluded that . . . requiring plaintiff to seek a preliminary injunction simply to preserve a willful infringement claim would be a waste of time and resources.

Englishtown, Inc. v. Rosetta Stone Inc., 962 F. Supp. 2d 355, 359 (D. Mass. 2013) (discussing DataQuill) (internal citations omitted).  Englishtown followed this logic, writing that because its willful infringement plaintiff ceased practicing the patents-in-suit and did not compete with the defendant, "[i]t is therefore likely that, as in DataQuill, plaintiff could not obtain injunctive relief . . . and requiring it to seek a preliminary injunction would be a waste of this Court's time and resources."  Id.  This exception would not apply here.  The parties are competitors, and SimpliVity both practices the patent-in-suit and has sought monetary relief.  Thus, if the District Judge finds the preliminary injunction requirement of Seagate still to control (and notwithstanding this court's construction that Seagate does not present a *per se* bar), SimpliVity's failure to move for a preliminary injunction would prove fatal to its willful infringement claim.

In such case, this court recommends that dismissal of the willfulness allegations be with prejudice, since SimpliVity has not moved for a preliminary injunction.  See footnote 29, supra; footnote 33, infra.  And while SimpliVity previously may have been uncertain as to how the Court might interpret Section 284, SimpliVity could have hedged its bet and sought such relief.  Indeed, at the time of each filed complaint, Seagate remained good law, and its preliminary injunction requirement was unequivocal and controlling.

[31] Along similar lines, the court agrees with JDS Techs., Inc. v. Avigilon USA Corp., No. 15 Civ. 10385, 2015 WL 3603525 (E.D. Mich. June 5, 2015) that "Seagate addressed the requirements for *proving*, not pleading, willful infringement."  Id. at *3 (quoting Seagate's requirement for what "a patentee must *show* by clear and convincing evidence" in order "to *establish* willful infringement" and citing "[o]ther district courts [that] have likewise interpreted Seagate as discussing a proof standard, not a pleading standard") (emphases added in JDS).  Seagate's original context was a discovery dispute.  See Seagate, 497 F.3d at 1371-72 ("The ultimate dispute in this case is the proper scope of discovery. . . . [T]he proper legal standard for willful infringement informs the relevance of evidence relating to that issue and, more importantly here, the proper scope of discovery.") (citing authorities).  But Seagate's express reference to clear and convincing evidence suggests its test to be directed elsewhere than the 12(b)(6) realm.  Accord, e.g., E.E.O.C. v. Scrub, Inc., No. 09 Civ. 4228, 2009 WL 3458530, at *2 (N.D. Ill. Oct. 26, 2009) ("The manner of proof is distinct from pleading requirements.") (citing Twombly, 550 U.S. at 570; Swierkiewiez v. Sorema N.A., 534 U.S. 506, 514-15 (2002)); cf., e.g., In re Pratt, 462 F.3d 14, 21 (1st Cir. 2006) (discussing "*evidentiary* standard of clear and convincing evidence") (emphasis added).

offered little by way of a concrete standard to assume the mantle.  See id. at *7 ("[A]lthough there is no precise rule or formula for awarding damages under § 284, a district court's discretion should be exercised in light of the considerations underlying the grant of that discretion.") (quoting Octane Fitness, LLC v. ICON Health & Fitness, Inc., 134 S. Ct. 1749, 1756 (2014)). Indeed, Halo—somewhat confoundingly—ennobles courts "to punish the full range of culpable behavior," while also "limiting the award of enhanced damages to egregious cases of misconduct beyond typical infringement."  Id. at *9, 11.

Turning then to the SAC, SimpliVity's willfulness allegations concern Springpath's alleged escalation of infringing activities after receipt of the original Complaint in September 2015.  See SAC at ¶¶ 60-63.  SimpliVity in its supplemental briefing does an about-face, largely seeking to premise willfulness upon allegations in the SAC regarding Springpath's alleged pre-litigation actions.  See Docket # 65 at p. 2 (citing SAC at ¶¶ 18-26).  While crediting the latter would run afoul of Halo's warning against awarding enhanced damages in garden-variety infringement matters, see 136 S. Ct. at 1935, the allegations of Springpath's post-Complaint Data Platform sales, promotions, and instructions—its alleged "escalation"—fit within Halo's explanation that "a person is reckless [and therefore potentially liable for enhanced damages] if he acts 'knowing or having reason to know of facts which would lead a reasonable man to realize' his actions are unreasonably risky."  Id. at 1933 (quoting In Safeco Ins. Co. of America v. Burr, 551 U.S. 47, 69 (2007)) (emphasis removed).  Accepting the well-pled allegations of the SAC to be true, Springpath's post-Complaint conduct rightly may be characterized as Springpath acting despite "knowing or having reason to know of facts which would lead a reasonable man to realize his actions are unreasonably risky," since it knew litigation was afoot.  See id. (quotation marks and emphasis omitted).  Stated otherwise, Springpath's post-suit actions are plausibly

36

reckless and so, under <u>Halo</u>, are subject to the prospect of enhanced damages.  Accordingly, the court recommends the survival of SimpliVity's willful infringement claim.[32]

      D.    <u>Injunctive Relief</u>

SimpliVity has requested that the court enjoin Springpath from continuing to infringe, as well as impose other penalties such as directing Springpath to surrender or destroy all infringing products.  <u>See</u> SAC Prayer for Relief at § (g).  Springpath argues the court should deny this relief because (1) the harm accruing to SimpliVity from the denial of an injunction would not outweigh the harm to Springpath as a result of one being issued (since Data Platform is Springpath's only product); and (2) there is no causal nexus between the '799 patent's patented feature and sales of Data Platform.  SimpliVity substantively responds to these arguments, but its procedural argument that the court cannot dismiss on a 12(b)(6) motion a demand for this specific form of relief is what persuades this court to recommend against dismissal.

Abundant authority states that so long as any portion of SimpliVity's underlying claim survives, Springpath's current motion is an improper procedural vehicle for dismissal of SimpliVity's request for an injunction.  Simply put, "a claim for permanent injunction should not be stricken at the pleading stage when the underlying claim is not dismissed."  <u>S.E.C. v. Life Wealth Mgmt., Inc.</u>, No. 10 Civ. 4769, 2010 WL 4916609, at *1 (C.D. Cal. Nov. 24, 2010) (citing cases); <u>see</u>, <u>e.g.</u>, <u>Bouveng v. NYG Capital LLC</u>, No. 14 Civ. 5474, 2015 WL 3503947, at *15 (S.D.N.Y. June 2, 2015) (same) (quoting <u>Marino v. Nw. Mut. Life Ins. Co.</u>, No. 00 Civ. 3212,

---

[32] The court recognizes Springpath's argument that courts have cautioned against awarding enhanced damages strictly for allegations of post-litigation conduct.  <u>See</u> Docket # 67 at p. 2.  However, Springpath here relies on authorities that in turn expressly relied upon <u>Seagate</u>'s preliminary injunction rule in reaching their conclusions.  <u>See</u> <u>M2M Sols. LLC v. Motorola Sols., Inc.</u>, No. 12 Civ. 33, 2016 WL 70814, at *16 (D. Del. Jan. 6, 2016); <u>Radware, Ltd. v. A10 Networks, Inc.</u>, No. 13 Civ. 02021, 2013 WL 5373305, at *6 (N.D. Cal. Sept. 24, 2013).  Accordingly, these authorities are equally undermined by <u>Halo</u>.

2001 WL 262574, at *3 (S.D.N.Y. Mar. 14, 2001) and citing Messinger v. JPMorgan Chase Bank, N.A., No. 13 Civ. 2444, 2014 WL 904528, at *2 (S.D.N.Y. Mar. 7, 2014)).  Because, as discussed herein, the court recommends that the SAC survive dismissal, the motion to dismiss SimpliVity's prayer for injunctive relief should be denied.

## CONCLUSION

In accordance with the foregoing, the court recommends the Court DENY Springpath's motion (Docket # 40) in its entirety.[33] [34]

/s/ David H. Hennessy
David H. Hennessy
UNITED STATES MAGISTRATE JUDGE

---

[33] In the event the Reviewing Court opts to dismiss any portion of the SAC, the court recommends that such dismissal be without prejudice.  "[D]ismissal with prejudice is an extreme sanction, which should be employed as a last resort," Nurse v. Sheraton Atlanta Hotel, 618 F. App'x 987, 989 (11th Cir.) (citing Goforth v. Owens, 766 F.2d 1533, 1535 (11th Cir. 1985)), cert. denied, 136 S. Ct. 548, 193 L. Ed. 2d 438 (2015), reh'g denied, 136 S. Ct. 1251 (2016), and often is reserved for situations in which an amendment to the complaint would be futile.  See, e.g., Gibbs v. SLM Corp., 336 F. Supp. 2d 1, 8 (D. Mass. 2004) (citing Demars v. General Dynamics Corp., 779 F.2d 95, 99 (1st Cir. 1985)), aff'd, No. 05 Civ. 1057, 2005 WL 5493113 (Aug. 23, 2005).  Although the SAC technically is SimpliVity's third complaint, as discussed, the original pleading was amended to fix a typographical error, and SimpliVity amended its FAC after Springpath agreed to withdraw its motion to dismiss in lieu of a ruling.  See Section I, supra.  Thus, this is not an instance where a plaintiff barely has survived dismissal of its first two complaints so that further amendment would be futile; to the contrary, this is the first complaint subject to substantive 12(b)(6) scrutiny.  See, e.g., Day v. Fallon Cmty. Health Plan, Inc., 917 F. Supp. 72, 79 (D. Mass. 1996) ("Because this is the first time that the merits of the Complaint have come under the scrutiny of this Court, it will dismiss the Complaint without prejudice.").  This being the case, the court recommends that any dismissal (which in the first instance the court recommends against) be without prejudice.  The only potential exception would lie in a dismissal of SimpliVity's willfulness allegations resulting from SimpliVity's failure to move for a preliminary injunction, since in that instance further amendment would be futile.  See footnotes 29, 30, supra.

[34] Per Fed. R. Civ. P. 72(b)(2), "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations."  "Given adequate notice, 'a party's failure to assert a specific objection to a report and recommendation irretrievably waives any right to review by the district court and the court of appeals.'" Cortes-Rivera v. Dep't of Corr. & Rehab. of Com. of Puerto Rico, 626 F.3d 21, 27 (1st Cir. 2010) (quoting Santiago v. Canon U.S.A., Inc., 138 F.3d 1, 4 (1st Cir. 1998)).